IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2019 Term

_____

No. 18-0399

_____

IN RE B.S.

FILED

**March 19, 2019**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

Appeal from the Circuit Court of Mercer County
The Honorable William J. Sadler, Judge
Case No. 16-JA-152

AFFIRMED

_____

Submitted: January 16, 2019
Filed: March 19, 2019

Shannon L. Baldwin, Esq.
Baldwin Law Office, PLLC
Bluefield, West Virginia
Counsel for Petitioner M.S.

Gerald R. Linkous, Esq.
Mercer County Public Defender
Corporation
Princeton, West Virginia
Counsel for Respondent C.O.

Patrick Morrisey, Esq.
Attorney General
Brandolyn N. Felton-Ernest, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for Respondent DHHR

P. Michael Magann, Esq.
Magann Law Office, PLLC
Bluefield, West Virginia
Guardian ad Litem for B.S.

JUSTICE ARMSTEAD delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "'Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.' Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996)." Syllabus Point 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

2.      "A parent has the natural right to the custody of his or her infant child, and, unless the parent is an unfit person because of misconduct, neglect, immorality, abandonment, or other dereliction of duty, or has waived such right, or by agreement or otherwise has permanently transferred, relinquished or surrendered such custody, the right of the parent to the custody of his or her infant child will be recognized and enforced by the courts." Syllabus Point 1, in part, *Nancy Viola R. v. Randolph W.*, 177 W.Va. 710, 356 S.E.2d 464 (1987).

i

3. "Although parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, is the health and welfare of the child. Thus, in furtherance of the goals of balancing the substantial parental rights and notice of the children's best interests, the least restrictive alternative is employed." Syllabus Point 3, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996).

ARMSTEAD, Justice:

Petitioner M.S.[1] ("Petitioner Father") appeals the March 30, 2018, disposition order of the Circuit Court of Mercer County which terminated the custodial rights, but left intact the parental rights, of Respondent Mother C.O. ("C.O") to the minor child B.S. Petitioner Father has sole custody of B.S. In this appeal, Petitioner Father asserts that the circuit court erred by failing to terminate C.O.'s parental rights. By contrast, C.O. argues that the circuit court "did not err when it terminated C.O.'s custodial rights instead of [her] full parental rights" and asks this Court to affirm the circuit court's order.

Based on our established standard of review, we find that the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.[2] Therefore, we affirm the circuit court's order terminating C.O.'s custodial rights, but leaving intact her parental rights. We note, however, that the circuit court retains jurisdiction over this matter and has the ability to terminate C.O.'s parental rights in the future if it determines that such termination is in the child's best interest.

---

[1] We follow our traditional practice in cases involving sensitive facts and use initials rather than surnames to identify the parties. *See In the Matter of Jonathan P.*, 182 W.Va. 302, 303 n.1, 387 S.E.2d 537, 538 n.1 (1989).

[2] *See* Syl. Pt. 1, in part, *In Interest of Tiffany Marie S.,* 196 W.Va. 223, 470 S.E.2d 177 (1996) ("[A] reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.").

# I. FACTUAL AND PROCEDURAL BACKGROUND

C.O. and Petitioner Father are the parents of B.S. She was born in 2012. On August 10, 2016, the Department of Health and Human Resources ("DHHR") filed an abuse and neglect petition alleging that B.S. had been exposed to drug use and domestic violence while living with C.O.[3] The petition alleged that C.O., C.O.'s boyfriend, C.G., and C.O.'s stepfather, M.B., lived together in the same residence. According to the petition, C.O., C.G., and M.B. were using "heroin, meth, [and] pills" in the residence. The petition provides that "approximately two weeks ago, [C.O.'s boyfriend C.G.] overdosed and had to be taken to the hospital. Narcan was required to save his life. The child [B.S.] was present during this drug usage." Further, the petition noted that "there is no food in the home. The caregivers sell their food stamps for drug money. [B.S] will stray to the homes of neighbors to ask for food and drink." During an interview with the DHHR, B.S. reported that her mother's boyfriend C.G. "fights with her mommy . . . has bit her mom on the stomach and arm, as well as having dragged mom by the foot to her room. [B.S.] disclosed that she saw these things and that she went to hide."

C.O. initially admitted to using marijuana but denied any other substance abuse. However, medical records obtained by the DHHR demonstrated that C.O. went to the hospital on June 23, 2016, and admitted to taking "suboxone, meth, and marijuana." A medical record from July 10, 2016, showed that C.O. had overdosed on heroin. The

---

[3] Petitioner Father did not live with C.O. and B.S.

medical record provides that C.O. admitted to "heroin or dilaudid use . . . [and] tested positive for Amphetamines, Cannabinoids, and Opiates at that time. [C.O.] left the hospital against medical advice."

The DHHR interviewed Petitioner Father who stated that C.O. had a substance abuse problem. Petitioner Father said that C.O. told him she was using heroin a few months prior to July 2016. According to the abuse and neglect petition, Petitioner Father had observed C.O. under the influence of drugs in "early July 2016. [Petitioner Father] left [B.S.] in C.O.'s care and has not intervened as far as filing for a change in custody or reporting concerns." The petition therefore named Petitioner Father as a respondent, providing that he "has neglected [B.S.] due to failure to protect the child from exposure to substance abuse."

The circuit court entered an initial order on August 10, 2016, finding that imminent danger existed to the well-being of B.S. "due to the substance abuse in the home." The court transferred custody of B.S. to the DHHR. The circuit court held an adjudicatory hearing on October 7, 2016. At this hearing, C.O. stipulated to neglecting B.S. due to substance abuse. The circuit court adjudicated her as an abusing parent and granted her motion for a post-adjudicatory improvement period pursuant to W.Va. Code § 49-4-610(2) (2015).[4]

_____

[4] W.Va. Code § 49-4-610(2) provides, in part: "Post-adjudicatory improvement period. - After finding that a child is an abused or neglected child pursuant to section six

3

Additionally, the circuit ordered that Petitioner Father be granted a pre-adjudicatory improvement period pursuant to W.Va. Code § 49-4-610(1),[5] and that B.S. be placed in his custody. On January 30, 2017, the circuit court entered an order finding that Petitioner Father's pre-adjudicatory improvement period was "a success." The circuit court ordered that B.S. would remain in his custody.

As part of her post-adjudicatory improvement period, C.O. participated in a multi-disciplinary treatment team meeting which resulted in the creation of a family case plan. This plan set forth the following requirements for C.O. before she could be reunified with B.S.: "that she address her substance abuse issues, successfully complete substance

_____

hundred one of this article, a court may grant a respondent an improvement period of a period not to exceed six months[.]"

[5] W.Va. Code § 49-4-610(1) provides, in part:

> (1) Preadjudicatory improvement period. - A court may grant a respondent an improvement period of a period not to exceed three months prior to making a finding that a child is abused or neglected pursuant to section six hundred one of this article only when:
>
> (A) The respondent files a written motion requesting the improvement period;
>
> (B) The respondent demonstrates, by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period and the court further makes a finding, on the record, of the terms of the improvement period[.]

abuse services, remain substance free, participate in parenting skills and adult life skills classes, address domestic violence issues, and be self-sufficient."

C.O. entered a sober living facility in February 2017 and remained there until September 2017. A number of review orders entered by the circuit court during this time reflect the success C.O. had while residing at the sober living facility. In April 2017, the circuit court entered the following order: "The Court is advised that [C.O.] is doing well and GRANTS an extension to her post-adjudication improvement period." During a review hearing on July 14, 2017, the circuit court found that C.O. "is doing very well at [the sober living facility]. She has completed all classes through the Day Report Center, her drug screens are negative, and she is complying with all services. Visitation has been increased to three nights and four days with the child [B.S.] at the [sober living facility]." On August 11, 2017, the circuit court ordered that C.O. "be allowed to pick up her child, [B.S.], when [C.O.] is exercising her custody and visitation with [B.S.]."

C.O. moved out of the sober living facility in September 2017. The circuit court held an emergency hearing regarding C.O.'s visitation with B.S. on September 21, 2017. In its order following this hearing the circuit court provided "the Court is advised that [C.O.] has relapsed in her drug use. [Petitioner] Father wants to stop all visitation by [C.O.]" The court ordered that C.O. submit to a drug screen and that she only have supervised visitation with B.S. Further, the court ordered that if C.O. was impaired, "the visit shall not occur."

5

The next review hearing occurred in October of 2017. During this hearing, the guardian ad litem recommended that C.O.'s visitations be suspended until she enrolled in a substance abuse treatment program. The circuit court agreed, granted the guardian ad litem's motion, and recommended that C.O. return to the sober living facility. During a November 17, 2017, review hearing, the DHHR advised the circuit court that C.O. "relapsed in September on cocaine, opiates, and marijuana. [C.O.] admitted to using suboxone. [C.O.] is currently pregnant, has not entered a detox program and is not complying with services."

On January 23, 2018, the DHHR filed a motion to terminate C.O.'s parental rights. The DHHR's motion provided that after C.O. moved out of the sober living facility in September 2017, she

> did not remain substance free; she refused to seek additional substance abuse treatment as ordered by the Court, and she has not successfully complied with the Family Case Plan. [C.O.] is no longer in contact with the Department and her whereabouts are currently unknown. [C.O.] cannot show this Court by clear and convincing evidence that she is likely to fully participate in any further improvement period. . . . There is no reasonable likelihood that the conditions of neglect can be substantially corrected in the near future, and it is necessary for the welfare of the infant child to terminate the parental, custodial, and guardianship rights of [C.O.].

The circuit court held a disposition hearing on February 9, 2018. During this hearing, DHHR worker Crystal Stock testified that C.O.'s parental rights should be terminated. Ms. Stock stated that C.O. did "exceptionally well" from February through September 2017 when she resided at the sober living facility. However, C.O. relapsed the

6

first weekend after moving out of the sober living facility. According to Ms. Stock, after C.O. relapsed, she stopped meeting with her in-home provider, her parenting provider, and failed to keep in contact with the DHHR. Further, all visitation with B.S. stopped after her relapse. Ms. Stock testified that the DHHR informed C.O. that she could resume visitation with B.S. if she got back into a substance abuse treatment program. However, C.O. chose not to return to substance abuse treatment and, therefore, visitation between C.O. and B.S. did not resume.

Samantha Taylor, an employee of Second Chances, also testified at the disposition hearing. Ms. Taylor stated that Second Chances offered "parenting services, adult life skills, and transportation . . . for drug screens, [and] trips to the doctor." Second Chances provided these services to C.O. while she resided at the sober living facility. The last contact Ms. Taylor had with C.O. was when she took her to a drug screen on October 18, 2017. According to Ms. Taylor, this drug screen "was positive for – I believe, it was just cocaine and THC." Ms. Taylor stated that Second Chances made numerous attempts to continue working with C.O. after October 2017, but that C.O. had stopped participating in any of their services.

The final witness at the disposition hearing was C.O. She admitted to relapsing in September 2017 after leaving the sober living facility. When asked what caused her to relapse, C.O. stated "honestly, like I really don't even know. I was doing good." C.O. testified that she was financially unable to return to a sober living facility in

7

November 2017.[6]  Also, when asked why she stopped contacting the DHHR after her

relapse, C.O. stated,

> I had kept . . . contact with Alisa Huffman for a little while.
> And, I know I talked to Samantha [Taylor] a little bit every
> now and then.  But, I was always working.  Like I really didn't
> have time for anything which was honestly a good thing, I
> guess. Like it kept me busy for like 90% of the day.  But, I
> mean, I didn't really have a way to get up with anybody, like
> working all the time.

Finally, C.O. was asked what the results of a drug screen would be if she

were tested on the day of the disposition hearing.  She replied, "I'd test positive probably

[for] THC, suboxone, and maybe opiate, I don't know.  But, it would be THC and suboxone

more than anything."

At the conclusion of the testimony, the guardian ad litem, counsel for the

DHHR, and counsel for Petitioner Father requested that the circuit court terminate C.O.'s

parental rights.  C.O.'s counsel asked the circuit court to terminate C.O.'s custodial rights,

but to leave her parental rights intact.

---

[6] According to the circuit court's December 18, 2017, order entered after a review
hearing, C.O. "advises that she is now employed and that she is going to return to
Resolution House (the sober living facility). . . . The guardian ad litem may ask the
Department to pay for [C.O.'s] treatment."  Further, during the disposition hearing the
guardian ad litem had the following exchange with C.O. about whether the DHHR would
pay for her to return to the sober living facility:

Q.    You remember me talking to you and telling you if you wanted to go
somewhere [to a sober living facility], I would ask the Court to pay for this?

A.    Briefly, yes.

8

The circuit court agreed with counsel for C.O. and ruled that it would only terminate C.O.'s custodial rights. It explained its ruling as follows:

> She [C.O.] did well for a period of eight months. I think she has it in her maybe someday to do well again. If I terminate her parental rights, [B.S.] will be left without anybody. Now, that doesn't mean, [C.O.] that [Petitioner Father] comes in here two months down the road and his girlfriend or significant other or wife wants to adopt [B.S.], it doesn't mean I won't terminate down the road. I mean, it's always a responsibility. I retain jurisdiction over this case. And, so I don't want to give you too much of a hope. I mean, there's – burdens on you. You'll have to do it by yourself. You're not gonna [sic] have any help. You're gonna [sic] have to do it on your own if you have any relationship with [B.S.] in the future. You know, like I said, I'm not promising you that you will even if you come in, you know, that the Court would give you anything. But, at this point and time, I'm not willing to deprive [B.S.] of any mother at all, or not only now, but in the future.
>
> And, the basis for this, the Court, you know, obviously finds that she's relapsed. She's failed to participate with the terms and conditions of the Family Case Plan, in that she's no longer participating in services. . . .
>
> But, at this time, the Court cannot find it would be in [B.S.'s] best interest to terminate all parental rights. But, the Court does find that it would be in her best interest to terminate the custodial rights. At this time, the Court will terminate her custodial rights.
>
> I don't think we need to keep this case on the docket. I don't think, you know, the Court finds the Department's not required to make – I mean the Department's made reasonable efforts and that there's no substantial likelihood that the conditions that led to neglect can be corrected in the near future.

After entry of the circuit court's dispositional order on March 30, 2018, Petitioner Father filed the present appeal.

9

## II. STANDARD OF REVIEW

This Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.,* 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). With this standard in mind, we proceed to examine the parties' arguments.

## III. ANALYSIS

On appeal, the issue is whether the circuit court erred in failing to terminate C.O.'s parental rights. Petitioner Father argues that C.O.'s parental rights should have been terminated based on the circuit court's factual findings.[7] By contrast, C.O. asserts that the circuit court's determination that "she has it in her to maybe someday do well again," was

---

[7] The guardian ad litem and the DHHR agree with Petitioner Father's position. However, neither the guardian ad litem, nor the DHHR filed an appeal following the circuit court's entry of its dispositional order.

10

supported by the evidence presented below. Further, C.O. argues that under the applicable standard of review, this Court may not reverse the circuit court's order simply because it would have decided the case differently. Rather, this Court is required to affirm if the circuit court's ruling is plausible in light of the record viewed in its entirety.

Our analysis begins with this Court's long-standing recognition that our law favors the right of a parent to raise their child:

> A parent has the natural right to the custody of his or her infant child, and, unless the parent is an unfit person because of misconduct, neglect, immorality, abandonment, or other dereliction of duty, or has waived such right, or by agreement or otherwise has permanently transferred, relinquished or surrendered such custody, the right of the parent to the custody of his or her infant child will be recognized and enforced by the courts.

Syl. Pt. 1, in part, *Nancy Viola R. v. Randolph W.*, 177 W.Va. 710, 356 S.E.2d 464 (1987).

Along with the substantial rights of a parent, this Court has repeatedly emphasized that a decision in an abuse and neglect proceeding must be made in furtherance of the child's best interests. "[T]he best interests of the child is the polar star by which decisions must be made which affect children." *Michael K.T. v. Tina L.T.*, 182 W.Va. 399, 405, 387 S.E.2d 866, 872 (1989) (citation omitted). Additionally,

> [a]lthough parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, is the health and welfare of the child. Thus, in furtherance of the goals of balancing the substantial parental rights and notice of the children's best interests, the least restrictive alternative is employed.

Syl. Pt. 3, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996).

11

The dispositional phase of a child abuse and neglect proceeding is governed by W.Va. Code § 49-4-604 (2016), which provides a number of alternatives the court may consider, with precedence given to the least restrictive alternative appropriate to the circumstances of a case. Under W.Va. Code § 49-4-604(b)(6), courts are directed to terminate an abusing parent's parental rights "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child."[8] The phrase "no reasonable likelihood that conditions of neglect or abuse can be substantially corrected" is defined in W.Va. Code § 49-4-604(c):

> (c) As used in this section, "no reasonable likelihood that conditions of neglect or abuse can be substantially corrected" means that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate

---

[8] W.Va. Code § 49-4-604(b)(6) provides, in relevant part:

> Upon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child, terminate the parental, custodial and guardianship rights and responsibilities of the abusing parent and commit the child to the permanent sole custody of the nonabusing parent, if there be one, or, if not, to either the permanent guardianship of the department or a licensed child welfare agency. The court may award sole custody of the child to a nonabusing battered parent.

12

capacity to solve the problems of abuse or neglect on their own or with help.[9]

Turning to the present case, we find that the circuit court's account of the evidence is plausible in light of the record viewed in its entirety. The circuit court's decision to leave C.O.'s parental rights intact was based largely on its finding that she "did well for a period of eight months. I think she has it in her maybe someday to do well again." Our review of the record confirms that C.O. had success—including clean drug screens and participation in adult and parenting skills courses—while living in the sober living facility. Thus, we find no error in this factual finding and conclude that it is supported by clear and convincing evidence.

Petitioner Father does not dispute the circuit court's factual finding that C.O. was successful during her time at the sober living facility. However, Petitioner Father urges this Court to substitute its judgment for the circuit court's and rule that the circuit court's remaining factual findings—that C.O. relapsed after leaving the sober living facility

---

[9] W.Va. Code § 49-4-604(c)(1)-(6) sets forth a list of non-exclusive circumstances describing situations in which "no reasonable likelihood that conditions of neglect or abuse can be substantially corrected." In addition to these statutory sections, this Court has provided guidance on when it is appropriate to terminate parental rights. In syllabus point 4 of *In re Cecil T.,* we held, in relevant part: "[C]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened[.]" 228 W.Va. 89, 98, 717 S.E.2d 873, 882.

and stopped participating in services offered by the DHHR—warrants termination of her parental rights. We disagree with Petitioner Father's argument.

The circuit court heard all of the testimony, made appropriate findings of facts based on this testimony, and thereafter explained its dispositional ruling. We find no reason to disturb the circuit court's ruling. As Justice Cleckley noted in *In re Katie S.*,

> [d]etermining whether a parent or guardian has neglected or abused his or her children, like most adversarial-oriented explorations, is a predominantly factbound enterprise. It follows that, absent a mistake of law, an appellate tribunal should disturb a circuit court's determination only if it is clearly erroneous. This means, of course, that if there are two or more plausible interpretations of the evidence, the circuit court's choice among them must hold sway.

198 W.Va. at 237, 479 S.E.2d at 191.

Additionally, the circuit court's ruling was consistent with W.Va. Code § 49-4-604's direction that precedence be given to the least restrictive alternative appropriate to the circumstances of an abuse and neglect matter. In this case, Petitioner Father has provided B.S. with a stable, permanent home. The circuit court's ruling has not threatened this stable placement. Instead, the circuit court made it clear that while it was not willing to terminate C.O.'s full parental rights, it was incumbent on C.O. to overcome her problems before her relationship with B.S. could resume:

> I mean, there's – burdens on you. You'll have to do it by yourself. You're not gonna [sic] have any help. You're gonna [sic] have to do it on your own if you have any relationship with [B.S.] in the future. You know, like I said, I'm not promising you that you will even if you come in, you know, that the Court would give you anything.

Finally, we note that the circuit court expressly found that C.O.'s parental rights could be terminated in the future:

> Now, that doesn't mean, [C.O.] that [if Petitioner Father] comes in here two months down the road and his girlfriend or significant other or wife wants to adopt [B.S.], it doesn't mean I won't terminate down the road. I mean, it's always a responsibility. I retain jurisdiction over this case.

According to the guardian ad litem's update[10] on the status of B.S., C.O. "has not requested to have any visits with B.S." since her custodial rights were terminated in February 2018. Further, the guardian ad litem's update provides that "B.S. is enrolled in first grade and is doing well in school. She has a good relationship with her father and his girlfriend of four years, R.M., who serves as a maternal figure for B.S. and who would like to adopt B.S. when [Petitioner Father] and R.M. marry, which they plan to do in the future."

It is clear that by applying the least restrictive alternative, the circuit court was offering C.O. the opportunity to demonstrate that she was overcoming her addiction as she had in the past. It is disappointing that C.O. has not followed the circuit court's advice and taken the necessary steps that could result in her having a renewed relationship with B.S. We agree with the circuit court that it is up to C.O. to address her substance abuse issues before being given the opportunity to rebuild her relationship with B.S.

---

[10] Pursuant to Rule 11(j) of the West Virginia Rules of Appellate Procedure, "[t]he parties shall provide a written statement of any change in the circumstances that were set forth in the briefs within one week of any oral argument scheduled by the Court or within such other time as may be specified by order."

With this in mind, while our ruling herein affirms the circuit court's order leaving C.O.'s parental rights intact, we echo the circuit court's statement that it retains jurisdiction over this matter. If R.M. seeks to adopt B.S., the circuit court should consider whether such an adoption would provide B.S. with permanency. This Court has repeatedly emphasized that children are entitled to permanency to the greatest degree possible. *See In re: Jonathan G.*, 198 W.Va. 716, 482 S.E.2d 893 (1996); *State ex rel. Amy M. v. Kaufman*, 196 W.Va. 251, 470 S.E.2d 205 (1996); *In re Brian D.*, 194 W.Va. 623, 461 S.E.2d 129 (1995).

## IV. CONCLUSION

Accordingly, for the reasons set forth herein, the dispositional order of the circuit court entered on March 30, 2018, is affirmed.

Affirmed.