# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **E.T. and C.S.**

**No. 19-0992** (Mercer County 17-JA-261-WS and 17-JA-262-WS)

**FILED**

**June 25, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother D.S., by counsel Andrea P. Powell, appeals the Circuit Court of Mercer County's September 18, 2019, order terminating her parental, custodial, and guardianship rights to E.T. and C.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Joshua J. Lawson, filed a response on behalf of the children in support of the circuit court's order. The child's foster parents W.S. and T.S., by counsel John E. Williams Jr., filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental, custodial, and guardianship rights without imposing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2017, the DHHR filed an abuse and neglect petition against petitioner and E.T.'s father alleging that E.T. was born drug-exposed.[2] The petition alleged that petitioner

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]The petition alleged that the infant child and petitioner tested negative for controlled substances at the time of delivery, but the "initial urine analysis was not comprehensive of all substances." Further, the petition alleged that E.T. was born showing signs of withdrawal as she

1

admitted to illegally using Dilaudid and Suboxone during her pregnancy and that she failed to protect the children from her substance abuse. The DHHR further alleged that petitioner lacked stable housing or income. Thereafter, the circuit court ratified the children's removal, and petitioner waived her preliminary hearing.

In December of 2017, the circuit court held an adjudicatory hearing wherein petitioner stipulated to abusing the children and was granted a post-adjudicatory improvement period. The terms and conditions of petitioner's improvement period included parenting skills and adult life skills classes, random drug screens, requirements to obtain housing and employment, and completion of a long-term substance abuse treatment program. At a review hearing in March of 2018, the DHHR stated that petitioner left an in-patient substance abuse treatment program before completion, but indicated that it was still willing to work with her to find another program. The circuit court ordered petitioner to cooperate with the DHHR. In June of 2018, the DHHR informed the circuit court that petitioner had yet to enter another substance abuse treatment program, failed to appear for drug screens, and was missing visits with the children. However, in August of 2018, the circuit court held a hearing and evidence established that petitioner successfully completed a month-long in-patient substance abuse treatment program. In September of 2018, the circuit court granted petitioner an additional improvement period.

Between September of 2018 and June of 2019, the circuit court held a series of review hearings on petitioner's improvement period. At these hearings, the DHHR testified that petitioner was at times compliant with out-patient substance abuse treatment services and drug screens, but at other times failed or did not appear for drug screens and struggled to maintain employment, stable housing, and visits with the children.

In August of 2019, the circuit court held a final dispositional hearing. At the hearing, the DHHR moved for termination of petitioner's parental, custodial, and guardianship rights while the guardian moved for the termination of petitioner's custodial rights only. Petitioner requested additional time to finish an in-patient substance abuse treatment program or, alternatively, that only her custodial rights be terminated. In requesting the termination of her parental, custodial, and guardianship rights, the DHHR alleged that petitioner was noncompliant with several terms of her improvement period. Notably, a DHHR caseworker testified that petitioner had multiple positive drug screens while missing other screens altogether during her improvement periods and was unable to maintain employment and secure housing. Additionally, a service provider testified that petitioner had difficulty finding employment because she did not have a driver's license or own a vehicle. She did testify further that petitioner was offered subsidized housing near public transportation on multiple occasions. Finally, the provider testified that petitioner had refused to participate in a drug screen in March of 2019. Another service provider testified that petitioner occasionally missed visits with the children, leading to multiple instances where the provider picked up the children for the visit and petitioner did not appear. The provider also testified that while petitioner was loving with the children in the visits she did attend, she also failed to provide formula, diapers, wipes, or bottles, relying on the foster parents to provide those items. After the

was "tight, jittery[,] and had an excoriated bottom" and was treated for those withdrawal symptoms.

testimony of these witnesses, the circuit court found that substance abuse remained "an unresolved issue throughout the pendency of this case." Finally, the circuit court found that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect, given that she failed to follow through with the family case plan and associated services. Accordingly, the circuit court terminated petitioner's parental, custodial, and guardianship rights to the children.[3] It is from the September 18, 2019, dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner alleges that the circuit court erred in terminating her parental, custodial, and guardianship rights because she "made major strides forward . . . towards her goals of sobriety and stability." Petitioner argues that under the specific circumstances in this case, the circuit court could have terminated her custodial rights only. Further, petitioner argues that terminating only her custodial rights would have allowed the children to remain in their placement and "still give [her] a mechanism to remain in their life and continue taking the initiative to improve her circumstances." We disagree.

In support of her sole assignment of error, petitioner cites to *In re* B.S., 242 W. Va. 123, 829 S.E.2d 754 (2019), to argue in favor of this less-restrictive disposition. In *In re B.S.*, the mother had her custodial rights terminated, but retained her parental rights based upon eight months of no positive drug screens and the belief that she may "someday . . . do well again." *Id.* at 129, 829 S.E.2d at 760. Here, unlike in the case cited, petitioner failed or otherwise did not participate in several drug screens throughout the proceedings, and the circuit court found that substance abuse remained an unresolved issue at the final dispositional hearing.

---

[3]E.T.'s father's parental, custodial, and guardianship rights were also terminated. C.S.'s father's parental rights remain intact. However, the DHHR indicates that it has moved for termination of C.S.'s father's parental rights and anticipates such termination. As such, the permanency plan is for the children to be adopted by their current foster family.

West Virginia Code § 49-4-604(b)(6) (2019)[4] provides that the circuit court may terminate parental, custodial, and guardianship rights when "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and when termination is necessary "for the welfare of the child." Further, West Virginia Code § 49-4-604(c)(3) (2019) provides that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when the parent has "not responded or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child."

The circuit court correctly found that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected because petitioner failed to comply with many services, and terms and conditions of her family case plan. Notably, petitioner does not dispute that she missed or failed several drug screens and supervised visits with the children, instead pointing to periods in her improvement periods when she was compliant. Yet the record below indicates that petitioner's compliance was inconsistent. Additionally, while it may be true that petitioner has previously acknowledged struggling with substance abuse, she has at other times flatly denied such abuse while testing positive on some drug screens and failing to appear for other screens altogether. Further, while petitioner requested additional time to complete a substance abuse treatment program at her final dispositional hearing, her record of compliance with such treatment programs is mixed. While petitioner did complete one twenty-eight-day program during her improvement period, this was not a long-term treatment program as required, and she left another program only four days into rehabilitation. The record also reflects that petitioner struggled to maintain housing and employment throughout the proceedings. Ultimately, petitioner's assertion that she substantially complied with the improvement period ignores the fact that her lack of suitable housing, failure to stay drug free, and lack of candor with the circuit court were not remedied sufficiently to justify the return of the children to her care.

Moreover, this evidence supports a finding that termination of parental, custodial, and guardianship rights was necessary for the welfare of the children. Clearly, petitioner presented a danger to the children if in her custody. Additionally, "we find that adoption, with its corresponding rights and duties, is the permanent out-of-home placement option which is most consistent with the child's best interests." *State v. Michael M.*, 202 W. Va. 350, 358, 504 S.E.2d 177, 185 (1998) (internal quotations omitted). The circuit court's termination of petitioner's parental, custodial, and guardianship rights to E.T. and C.S. was necessary to facilitate adoption for the children. As such, it is clear that termination of petitioner's parental rights to both of the children was necessary to provide permanency for them and, therefore, necessary for their welfare. Further, we have long held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604 (2019)] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c) (2019)] . . . that conditions of neglect or abuse

---

[4]Although the Legislature amended West Virginia Code § 49-4-604 effective June 5, 2020, including renumbering the provisions, the amendments do not impact this case.

can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error in the circuit court's order terminating petitioner's parental, custodial, and guardianship rights without the imposition of a less-restrictive alternative.

Lastly, because the proceedings in circuit court regarding C.S.'s father are still ongoing, this Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(b)(6) (2019)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 18, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: June 25, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

6