**FILED**

**June 22, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **E.J. and H.J.**

**No. 21-0061** (Preston County 20-JA-8 and 20-JA-9)

**MEMORANDUM DECISION**

Petitioner Father A.J., by counsel Kristen D. Antolini, appeals the Circuit Court of Preston County's December 29, 2020, order terminating his parental rights to E.J. and H.J.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Jennifer Yost, filed a response on behalf of the children also in support of the circuit court's order. Respondent Mother N.A., by counsel Natalie J. Sal, also filed a brief in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights rather than employing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2020, the DHHR filed an abuse and neglect petition against petitioner and the mother alleging exposure of the children to drug use, domestic violence, unsafe living conditions, and medical and educational neglect. According to the petition, the DHHR received a referral indicating that the children were living in their grandparents' home and the parents exposed the children to drug usage. The DHHR also alleged that petitioner, who did not have a driver's license, drove under the influence of drugs with the children in the vehicle. The DHHR also alleged that the grandparents and petitioner were abusing methamphetamine and emotionally abused the children. According to the petition, petitioner and the mother also routinely engaged in domestic disputes. The DHHR alleged that during one such dispute the mother attempted to leave with the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

children and petitioner threatened to kill the children with a vehicle. The DHHR further alleged that when the mother threatened to leave petitioner, he threatened to kill himself "to keep her from leaving due to the guilt she would feel by his suicide." According to the petition, petitioner also used drugs and passed out in his vehicle in front of the children on multiple occasions. The DHHR alleged that, during one such occasion, petitioner passed out in his vehicle while parked in front of a home where he purchased drugs. The DHHR alleged that the children were in the vehicle at the time, and one of the children left the vehicle and went inside of the home where petitioner purchased drugs, and sat inside the home until petitioner awoke and took the children home.

Next, the DHHR alleged that a Child Protective Services ("CPS") worker interviewed H.J. at her school where the child reported that petitioner was incarcerated, and that the child had seen petitioner physically fight his uncle who lived next door to the family over "drug money." H.J., who is eight-years-old, also reported that when her family fought, she would become scared and take her sister, six-year-old E.J., out to a trampoline and scream until a neighbor would come to help them. H.J. also informed the CPS worker that on one occasion E.J. opened her makeup box and found a sharp knife inside the box. The DHHR alleged that H.J. was serving as E.J.'s caretaker. due to the parents' lack of supervision. According to the petition, E.J. was largely non-responsive in her interview with the CPS worker but did indicate that she was afraid of her grandmother and petitioner because they were physically violent with each other. The DHHR alleged that the CPS worker spoke with E.J.'s teacher, who indicated the child was completely non-verbal at school. According to the petition, the children each had over fifteen absences and were tardy over thirty times each during the prior school year. Finally, the DHHR alleged that petitioner was released from incarceration prior to the filing of the petition.

The circuit court held a preliminary hearing in January of 2020 wherein petitioner proffered that he would likely be positive for methamphetamine during drug screening and had used that drug two days prior to the hearing. Petitioner also claimed that he was investigating drug rehabilitation treatment programs and had taken steps to obtain the same.

The circuit court held an adjudicatory hearing in March of 2020 wherein petitioner was absent but represented by counsel. Petitioner's counsel moved the circuit court to continue the hearing and claimed that petitioner lacked transportation to the hearing and was in the process of obtaining long-term drug treatment. The DHHR and guardian did not oppose the motion, and the circuit court continued the hearing. The circuit court rescheduled the adjudicatory hearing for April of 2020. However, petitioner again filed a motion to continue the hearing this time due to the coronavirus pandemic and ongoing judicial emergency. The circuit court held a continued adjudicatory hearing in August of 2020 wherein petitioner did not appear but was represented by counsel. The DHHR filed a motion to continue the hearing, which the circuit court granted.

In October of 2020, the circuit court held the continued adjudicatory hearing wherein petitioner failed to appear but was represented by counsel. Counsel for petitioner proffered that petitioner had not contacted her "in a long time" and that she had not been able to reach him. The DHHR informed the court that a capias order was pending against petitioner in an unrelated matter. The circuit court allowed the DHHR to present evidence in support of petitioner's adjudication. First, the mother testified that petitioner was "extremely physically and emotionally abusive toward her in front of the . . . children and towards the . . . children." The mother also testified that

petitioner was addicted to drugs and had not sought treatment for his addiction. Next, a CPS worker testified that the children were exposed to petitioner's domestic violence and drug use on numerous occasions. The CPS worker also testified that petitioner was not cooperative with the DHHR. Petitioner did not testify or present any evidence on his behalf. Based upon the evidence, the circuit court found that petitioner had a history of substance abuse, failed to provide for the children, and failed to meaningfully participate in the abuse and neglect proceedings. As a result, the circuit court adjudicated petitioner as an abusing and neglecting parent.

The next month, the circuit court held a dispositional hearing wherein petitioner appeared via video conference from a regional jail. At the outset of the hearing, petitioner's counsel proffered to the court that she had just recently been in contact with petitioner and that she needed a brief recess to discuss his options and legal issues with him. After a brief recess, the circuit court took judicial notice of the mother's testimony at the adjudicatory hearing, petitioner's admission to using methamphetamine at the preliminary hearing, and petitioner's absences from other hearings. The circuit court also took judicial notice of petitioner's prior assertion that he was seeking to participate in drug rehabilitation treatment, which never occurred. The DHHR presented a CPS worker who testified that petitioner had no contact with the children since the beginning of the proceedings due to his failure to drug screen. The CPS worker also testified that petitioner failed to have contact with the children prior to the abuse and neglect petition and that the children lacked a bond with petitioner and expressed no desire to see him.

Next, petitioner testified that he did attend drug rehabilitation at Mountaineer Recovery in Martinsburg, West Virginia, but left early due to fears he would contract coronavirus. Petitioner also testified that he wanted to remedy his drug addiction but failed to offer any explanation as to why he missed prior court hearings and failed to participate in the proceedings. In light of the evidence, the circuit court found that petitioner missed several hearings throughout the proceedings and failed to provide any legitimate reasons for his failure to appear. The circuit court also found that petitioner failed to meaningfully participate in drug screenings or other services. Accordingly, the circuit court terminated petitioner's parental rights upon finding that there was no reasonable likelihood that he could correct the conditions of neglect in the near future and that termination was necessary for the children's welfare. It is from the December 29, 2020, dispositional order that petitioner appeals.[2]

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However,

[2]The mother successfully completed an improvement period and the petition against her was dismissed. The permanency plan for the children is to remain in her custody.

a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner alleges only one assignment of error, that the circuit court erred in terminating his parental rights rather than granting him a less-restrictive disposition because permanency for the children had previously been achieved when the court granted the mother sole legal and physical custody of the children. According to petitioner, the circuit court was required to give precedence to the dispositions as listed in West Virginia Code § 49-4-604(c) and that it should have granted him disposition pursuant to § 49-4-604(c)(5).[3] We find no error in the circuit court's termination of petitioner's parental rights.

Pursuant to West Virginia Code § 49-4-604(c)(6), circuit courts are directed to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(d) defines "[n]o reasonable likelihood that [the] conditions of neglect or abuse can be substantially corrected" as follows: "the abusing [parent] . . . ha[s] demonstrated an inadequate capacity to solve the problems of abuse or neglect on [his] own or with help."

In support of his sole assignment of error that the court erred in denying him a less restrictive disposition, petitioner cites to *In re* B.S., 242 W. Va. 123, 829 S.E.2d 754 (2019). In *B.S.*, the mother had her custodial rights terminated, but retained her parental rights based upon eight months of *no positive drug screens* and the belief that she may "someday . . . do well again." 242 W. Va. at 129, 829 S.E.2d at 760 (emphasis added). This case is not analogous to *In re B.S.* because petitioner, unlike the petitioner in B.S., either failed or did not participate in drug screens throughout the proceedings, and the circuit court found that his substance abuse remained an unresolved issue at the final dispositional hearing.

Further, the circuit court correctly found that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected because petitioner continued to abuse controlled substances, failed to visit or bond with the children, and failed to participate in the proceedings. Notably, petitioner does not dispute that he missed or failed several drug screens and did not have contact with the children throughout the proceedings, instead arguing that he could have been granted a less-restrictive disposition to resolve these issues. Specifically,

---

[3]West Virginia Code § 49-4-604(c)(5) provides that a circuit court may

[u]pon a finding that the abusing parent or battered parent or parents are presently unwilling or unable to provide adequately for the child's needs, commit the child temporarily to the care, custody, and control of the department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court.

petitioner argues that if he was granted a less-restrictive disposition to the termination of his parental rights, it "would have been incumbent upon [him] to resolve his criminal proceedings, obtain substance abuse treatment, seek counseling for domestic violence and/or anger management issues, and demonstrate to the court that he was then a fit parent." Yet the record below indicates that petitioner was completely noncompliant with the DHHR and refused to participate in services during the proceedings that could have remedied these issues. While petitioner claims to have sought drug treatment during the proceedings, he provided no record of this to the circuit court. Ultimately, petitioner's assertion that he could remedy his issues with more time ignores the fact that he failed to stay drug free, attend scheduled court hearings, or participate in drug screens sufficiently to justify the return of the children to his care.

Finally, the fact that the children's mother obtained full custody of the children has no bearing on the circuit court's termination of petitioner's parental rights. While petitioner argues that this permanent placement allowed for the implementation of a less-restrictive dispositional alternative, he ignores the fact that we have previously held that West Virginia Code § 49-4-604 "permits the termination of one parent's parental rights while leaving the rights of the [other] parent completely intact, if the circumstances so warrant." *In re Emily*, 208 W. Va. 325, 344, 540 S.E.2d 542, 561 (2000). Further, "simply because one parent has been found to be a fit and proper caretaker for [the] child does not automatically entitle the child's other parent to retain his/her parental rights if his/her conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve." *Id.*

Based on the foregoing, we find no error in the circuit court's refusal to grant petitioner a less-restrictive alternative to termination of his parental rights, given that we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). While petitioner maintains that he expressed a desire to reestablish a relationship with the children at the dispositional hearing, he does not dispute that he had no contact with the children throughout the proceedings due to his failure to participate in drug screens and the proceedings. Due to petitioner's failure to address the conditions of abuse and neglect or establish a bond with the children, we find no error in the circuit court's finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination was necessary for the children's welfare. Therefore, we likewise find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 29, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: June 22, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton