**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**


*In re* **T.L.-1 and M.L.**

**No. 22-881** (Marion County CC-24-2018-JA-170 and CC-24-2018-JA-171)


**MEMORANDUM DECISION**


Petitioner Father T.L.-2[1] appeals the Circuit Court of Marion County's November 6, 2022, order terminating his parental rights to T.L.-1 and M.L., arguing that termination was based solely on his incarceration, that modification of his prior disposition was inappropriate, and that the circuit court failed to adequately manage post-termination visitation.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming, in part, and vacating, in part, the November 6, 2022, dispositional order and remanding for further proceedings is appropriate, in accordance with the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure. *See* W. Va. R. App. P. 21.

In December 2018, the DHS filed a petition alleging that the children's mother had a pervasive drug problem and that petitioner had abandoned the children due to being incarcerated. The DHS later amended the petition twice. The first amendment outlined petitioner's crimes, including robbery in the first degree (with a firearm), conspiracy to commit a felony, and delivery of a controlled substance (cocaine). The second amendment added allegations of abuse and neglect by the paternal grandmother, the children's legal guardian. As petitioner was still incarcerated when the second amended petition was filed and the mother was not in a position to regain custody, the children were placed in foster care.

---

[1]Petitioner appears by counsel Larry J. Conrad. The West Virginia Department of Human Services appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Katica Ribel. Counsel Ashley Joseph Smith appears as the children's guardian ad litem.

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2]We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e). Additionally, because one child and petitioner share the same initials, we will refer to them as T.L.-1 and T.L.-2, respectively.

In June 2019, petitioner entered a stipulated adjudication, admitting that he abandoned the children. Petitioner further admitted that his abandonment amounted to abuse and neglect of the children. In October 2019, the mother regained physical and legal custody of the children. In December 2019, petitioner's dispositional hearing was held. The circuit court found petitioner failed to remedy the conditions of abuse and neglect that led to the removal of the children from his custody because he remained incarcerated. Instead of terminating petitioner's parental rights, the circuit court granted petitioner an alternative disposition pursuant to West Virginia Code § 49-4-604(b)(5) because permanency had been achieved for the children as they were returned to the mother's custody.

In October 2020, a subsequent abuse and neglect petition was filed against the children's mother, and the mother voluntarily relinquished her parental rights to the children. The children were initially placed in a foster home, but due to aggressive behaviors and expression of suicidal ideations, T.L.-1 was hospitalized then placed in a residential facility. In March 2021, the DHS and guardian ad litem filed a joint motion to modify petitioner's disposition because the relinquishment of the mother's parental rights constituted a change in circumstances. The DHS and guardian ad litem argued that petitioner's parental rights needed to be terminated in order to allow the children to achieve permanency. Meanwhile, T.L.-1 was placed in three different foster homes that were each disrupted due to his behavior and two residential facilities before being hospitalized again. M.L. was placed with a new foster family following disruption of his initial placement due to his behavior.

In September 2022, a hearing was held on the joint motion to modify disposition. Petitioner testified that he was originally sentenced to thirty years of incarceration, but that the sentence was eventually reduced to twenty years. Petitioner further testified that his discharge date was December 1, 2026, and that his next parole eligibility hearing was in August 2023. Petitioner conceded that his release was not guaranteed at the parole hearing. Nevertheless, he requested that the circuit court delay ruling on the modification until his parole hearing, which, at the time, was nearly ten months away. A Child Protective Services ("CPS") worker testified that it would be in the children's best interest to terminate petitioner's parental rights in order to achieve permanency because the children needed and deserved stability and consistency. She confirmed that the permanency plan for the children was adoption. The CPS worker noted that the children had emotional and behavioral problems that caused some instability in their placements, particularly T.L.-1 who required multiple hospitalizations and residential placements. The CPS worker further testified that petitioner had not had personal interaction with the children for six years.

After considering the evidence presented, the circuit court found that the relinquishment of the mother's parental rights was a change in circumstances warranting modification of petitioner's disposition and that modification was in the best interest of the children. The circuit court further found that the evidence established there was no reasonable likelihood petitioner would be able to substantially correct the conditions of abuse and neglect for which he was previously adjudicated in the near future because the earliest petitioner would be released was still ten months away. The circuit court concluded that there was no less restrictive alternative to termination because it was the only way to achieve permanency for the children. Therefore, the circuit court found that termination of petitioner's parental rights was in the children's best

interests. Accordingly, the circuit court granted the joint motion to modify petitioner's disposition and terminated petitioner's parental rights to the children. In addition, the circuit court ordered post-termination visitation with the children, but left visitation to the discretion of the children's "then legal guardian." It is from the dispositional order that petitioner appeals.[3]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, petitioner asserts three assignments of error. Petitioner first argues that it was error for the circuit court to terminate his parental rights based solely on his incarceration without conducting an analysis of the factors established in *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 3. In *Cecil T.*, we held,

> [w]hen no factors and circumstances other than incarceration are raised at a disposition hearing in a child abuse and neglect proceeding with regard to a parent's ability to remedy the condition of abuse and neglect in the near future, the circuit court shall evaluate whether the best interests of a child are served by terminating the rights of the biological parent in light of the evidence before it. This would necessarily include but not be limited to consideration of the nature of the offense for which the parent is incarcerated, the terms of the confinement, and the length of the incarceration in light of the abused or neglected child's best interests and paramount need for permanency, security, stability and continuity.

*Id.* Although petitioner is correct that the dispositional order does not contain a discussion of the offenses for which petitioner was convicted, it does detail the terms of petitioner's confinement—that petitioner's next parole hearing was not scheduled for another ten months, which could be the earliest date of his release, and that his release on that date was uncertain. In addition, the record is clear that the circuit court properly considered the necessary factors in granting the motion to modify disposition. As set forth above, the circuit court heard extensive evidence about all of these factors, as the September 2022 hearing focused almost entirely on petitioner's incarceration and its impact on the children. *See id.* at 97, 717 S.E.2d at 881 (in determining whether a parent's incarceration results in the inability "to remedy the condition of abuse and neglect in the near future, the circuit court shall evaluate whether the best interests of a child are served by terminating the rights of the biological parent *in light of the evidence before it*") (emphasis added). As such, the circuit court's ultimate determination of the children's best interests was clearly made in consideration of "the length of the incarceration in light of the abused or neglected child[ren]'s . . . paramount need for permanency, security, stability and continuity." *See id.*

Petitioner next argues that it was error for the circuit court to modify his disposition because sufficient evidence was not presented showing that modification was in the children's best interest. *See* W. Va. Code § 49-4-606(a) (permitting modification of a dispositional order "if the court finds by clear and convincing evidence a material change of circumstances and that the modification is in the child's best interests"). Petitioner contends that the circuit court's finding

---

[3]The permanency plan for the children is adoption.

that adoption was in the children's best interests was erroneous because M.L.'s current placement initially decided not to adopt him but later changed their minds, and a placement had not yet been found for T.L.-1 at the time the motion was granted. We do not find this argument availing. "Ensuring finality for these children is vital to safeguarding their best interests so that they may have permanency and not be continually shuttled from placement to placement." *In re Cesar L.*, 221 W. Va. 249, 258, 654 S.E.2d 373, 382 (2007). "This Court has repeatedly emphasized that children are entitled to permanency to the greatest degree possible." *In re B.S.*, 242 W. Va. 123, 131, 829 S.E.2d 754, 762 (2019). The record is clear that the children's best interests necessitated permanency, security, stability, and continuity, given that a CPS worker's testimony established that the prolonged instability in caretakers and a lack of permanency negatively impacted the children to the extent that hospitalization and residential placements for T.L.-1 were necessary. Further, petitioner's request for the circuit court to delay ruling until after his parole hearing was contrary to law. Rule 5 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings prohibits a child abuse and neglect proceeding from being "delayed pending the initiation, investigation, prosecution, or resolution of any other proceeding, including, but not limited to, criminal proceedings." Accordingly, the circuit court's finding that adoption was in the children's best interests is well-supported by the record. *See* Syl. Pt. 2, *State v. Michael*, 202 W. Va. 350, 504 S.E.2d 177 (1998) (finding that "an adoptive home is the preferred permanent out-of-home placement of the child").

Finally, petitioner argues that the circuit court erred by failing to adequately manage post-termination visitation between petitioner and the children. The dispositional order permitted post-termination visitation between petitioner and the children at the discretion of the children's legal guardian. We have held that post-termination visitation is the right of the child, and it cannot be held hostage by those exercising legal custody. *See In re K.S.*, 246 W. Va. 517, 530, 874 S.E.2d 319, 332 (2022) ("The Court has made clear that such visitation is the right of the child; as such, this right cannot be held hostage by the biological fathers."); *In re Christina L.*, 194 W. Va. 446, 455 n.9, 460 S.E.2d 692, 701 n.9 ("Such post-termination visitation or other continued contact where determined to be in the best interest of the child could be ordered not as a right of the parent, but rather as a right of the child.").

Though no party assigned any error with regard to the circuit court's overall decision to allow post-termination visitation with the petitioner, we are concerned by the lack of evidence in the dispositional order demonstrating that post-termination visitation is in the best interests of the children.[4] We have acknowledged that post-termination visitation with the abusing parent may be appropriate if the evidence "indicate[s] that such visitation or continued contact would not be

---

[4] As a general rule, this Court declines to consider non-jurisdictional issues that are not raised by the parties to an appeal. However, "when it appears from this Court's review of the record on appeal that the health and welfare of a child may be at risk . . . this Court will take such action as it deems appropriate and necessary to protect that child." Syl. Pt. 6, *In re Timber M.*, 231 W.Va. 44, 743 S.E.2d 352 (2013); *see also In re J.A.*, 242 W. Va. 226, 235, 833 S.E.487, 496 (2019) (outlining this Court's history of protecting children sua sponte).

4

detrimental to the child's well being and would be in the child's best interest." *Id.* at 448, 460 S.E.2d at 694, Syl. Pt. 5, in part. At a minimum, "the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request." *Id.* No such findings were included in the dispositional order or are apparent from the appendix record. Accordingly, we must vacate the portion of the dispositional order pertaining to post-termination visitation with petitioner. We remand this matter for evaluation as to the appropriateness of post-termination visitation, especially in light of the fact that the record demonstrates that petitioner had not had a relationship with the children for the six years preceding modification. If the circuit court finds that visitation would not be detrimental to the children's well-being and would be in their best interests, visitation with petitioner should not be left to the discretion of the children's legal custodians. Finally, we direct the circuit court to consider whether continued association between the children is in their best interests and to take any steps necessary to facilitate the same, if appropriate. *See* Syl. Pt. 4, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991) (directing that, upon termination of parental rights, "the circuit court should consider whether continued association with siblings in other placements is in the child's best interests, and if [so], the court should enter an appropriate order to preserve the rights of siblings to continued contact").

For the foregoing reasons, we affirm the circuit court's November 6, 2022, order, in part, as it relates to the termination of petitioner's parental rights to T.L.-1 and M.L. We vacate the circuit court's order, in part, as it relates to post-termination visitation with petitioner, and remand this matter for further proceedings, including entry of an order evaluating the appropriateness of post-termination visitation with petitioner and continued association between the children. The Clerk is directed to issue the mandate contemporaneously with this memorandum decision.

Affirmed, in part; vacated, in part; and remanded with directions.

**ISSUED**: April 15, 2024

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn