**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **L.W. and M.B.**

**No. 21-0494** (Taylor County 19-JA-99 and 19-JA-100)

**MEMORANDUM DECISION**

Petitioner Mother C.B., by counsel Ashley Joseph Smith, appeals the Circuit Court of Taylor County's May 20, 2021, order terminating her parental rights to L.W. and M.B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and James W. Wegman, filed a response in support of the circuit court's order. The guardian ad litem, Mary S. Nelson, filed a response on the children's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion for a post-dispositional improvement period and in terminating her parental rights rather than imposing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2019, the DHHR filed a child abuse and neglect petition and alleged that petitioner had exposed the children to domestic violence and failed to provide the children with adequate care due to her substance abuse. At the time the petition was filed, petitioner was living with L.W.'s father, who also exercised partial custody of two older children from a prior

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

relationship.[2] The two older children disclosed that they witnessed petitioner beat L.W.'s father. Additionally, these children witnessed petitioner attack their mother, S.W., who later filed for a domestic violence protective order against petitioner. The DHHR also stated that then six-year-old M.B. was born with a "tethered spine," which required her to be catharized every four to six hours and required diapering as the child had no control over her bowels. The DHHR alleged that petitioner failed to address M.B.'s special needs, asserting that M.B. suffered from vaginal irritation due to petitioner's neglect. Finally, the DHHR alleged that, during its worker's interaction with petitioner, petitioner's "pupils were very small, and she was unable to sit still or focus." Petitioner was instructed to submit to a drug screen, but was unable to produce a sample, even after three hours of waiting and "plenty of water." Petitioner was also instructed as to how to complete a mouth swab in lieu of a urine drug screen but would not complete that screen. Petitioner waived her preliminary hearing, and the circuit court ordered her to participate in random drug screening and supervised visitation with the children.

The circuit court convened for an adjudicatory hearing in December of 2019, and petitioner stipulated to the allegations contained in the petition. The circuit court adjudicated petitioner as an abusing parent and the children as neglected children. Petitioner moved for a post-adjudicatory improvement period, which the circuit court granted.

The DHHR subsequently filed two amended petitions of child abuse and neglect. In August of 2020, the DHHR alleged that L.W.'s father allowed petitioner to have unsupervised contact with L.W., despite knowing that she was not permitted to have contact with the child outside the supervision of a third party. In October of 2020, the DHHR alleged that M.B. disclosed that petitioner choked her and used excessive corporal punishment against her.

The circuit court held a second adjudicatory hearing on the amended petitions in November of 2020. The evidence showed that M.B. submitted to a forensic interview, during which she disclosed that petitioner "would grab her by the throat, put her hands around her throat and squeeze." M.B. stated that petitioner was "angry when she put her hands around her throat." According to the DHHR worker for the case, M.B. was "very vocal and expressed concern regarding her safety with [petitioner.]" M.B. stated that "she would die young," if left in petitioner's care because petitioner choked her. M.B. also stated that petitioner would discipline her with a belt. M.B.'s forensic interview was admitted as evidence. Petitioner denied that she choked M.B. and asserted that the child was coerced into making the allegations by her current familial placement.

Petitioner and L.W.'s father admitted that petitioner had unsupervised contact with L.W. Petitioner testified that she had fewer than ten instances of unsupervised contact with the child. Petitioner denied that she was abusing controlled substances, despite the circuit court confronting her with an October of 2020 drug screen that was positive for methamphetamine. Petitioner also asserted that she had submitted to drug testing at a local hospital, despite the circuit court's order

---

[2]Petitioner asserts no parental or custodial rights to these children, and they are not at issue in this appeal.

to submit to testing at community corrections. The DHHR noted that since petitioner's positive drug screen in October of 2020, she had not submitted to a drug screen at the community corrections location.

The circuit court ultimately found that petitioner was not credible. The court noted that while petitioner had previously denied having unsupervised contact with L.W., she subsequently admitted to such contact but minimized that contact. The court further found that M.B.'s statements during the forensic interview were consistent with the statements made to the DHHR worker. The court found no evidence that M.B. was coached into making the allegations. The circuit court adjudicated petitioner as an abusing parent based on its findings and adjudicated the children as abused and neglected children. Further, the circuit court ordered petitioner to submit to a drug screen immediately following the hearing and reiterated its prior order that petitioner submit to drug screening at the community corrections location.

In May of 2021, the circuit court held the final dispositional hearing. The DHHR presented testimony from petitioner's caseworker and the director of community corrections. Petitioner's caseworker testified that petitioner completed parenting and adult life skills classes and a parental fitness evaluation. Petitioner also "faithfully" participated in random drug screening when she was on "demand" status, but petitioner failed to participate when she was placed on the random drug screening schedule, which occurred in mid-2020. The caseworker believed petitioner continued to abuse controlled substances and reminded the circuit court of petitioner's drug screen in October of 2020 that was positive for methamphetamine. The caseworker testified that near in time to this positive test, petitioner appeared to be under the influence when meeting with the caseworker and during a supervised visitation with the children. The caseworker testified that visitation had not resumed since that time because petitioner failed to consistently participate in random drug screening at community corrections after October of 2020. The caseworker explained that petitioner asserted she was participating in drug testing at a local hospital, despite the circuit court's order for her to participate at the community corrections location. Nevertheless, the caseworker requested that petitioner sign a release so that the alleged hospital drug screen results could be obtained. Petitioner did not sign the release. The director of community corrections confirmed that petitioner failed to submit to a drug screen following the November of 2020 hearing, as directed by the circuit court.

The caseworker testified that petitioner had not been honest with the multidisciplinary treatment team ("MDT"), and that petitioner's dishonesty was a barrier for treatment. The DHHR discovered that petitioner was living with L.W. from October of 2019 until May of 2020, even though the circuit court ordered that she have no unsupervised contact with L.W. The caseworker further testified that, when the DHHR took emergency custody of M.B., that child's social security benefits were ordered to be paid to the DHHR. However, the DHHR discovered that petitioner rerouted the payments back to herself soon after M.B.'s removal. The DHHR did not discover the discrepancy until March of 2020, at which point petitioner had received some $2,300 dollars in benefits. Although petitioner was notified of the issue, she had not provided those funds to the DHHR for M.B.'s care.

The caseworker further testified that M.B. continued to express that she was afraid of petitioner. Although M.B. was observed to be happy at supervised visitations, the caseworker

testified that M.B. stated she was excited to see L.W., not petitioner. Finally, the caseworker testified that petitioner had no insight into how her conduct constituted abuse or neglect of the children. The caseworker confirmed that petitioner completed requested services but believed there had been no internal shift in her thought process or insight into her own behavior.

Petitioner acknowledged that she was aware she was not permitted to live with L.W. during the proceedings and admitted that she had lived in the home for a period of ten months. During this period, she supervised the child alone for the majority of the week due to the father's work schedule. Petitioner asserted that the DHHR never asked her to provide proof of her drug screens to which she submitted at the local hospital. Further, petitioner admitted that she received M.B.'s social security benefits and had not provided those funds to the DHHR as requested. Petitioner stated that she did not understand that the circuit court had required her to drug screen following the November of 2020 hearing.

Ultimately, the circuit court found that petitioner's testimony was not credible based on her admission that she was living with L.W., which was contrary to her prior testimony that she had only a few unsupervised contacts with that child. The court further considered that it directed petitioner to drug screen after the November of 2020 hearing and found it was incredulous that she did not understand that order. The court found that petitioner failed to submit to random drug screening as directed and failed to address her substance abuse addiction. The circuit court also found that petitioner had not visited with the children since October of 2020 due to her failure to consistently submit to random drug screening. The circuit court denied petitioner's motion for a post-dispositional improvement period because of her failure to comply with random drug screening. Moreover, the circuit court denied petitioner's motion for termination of her custodial rights only due to the children's need for permanency. Finally, the circuit court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of neglect and abuse in the near future and that termination of petitioner's parental rights was necessary for the welfare of the children. Accordingly, the circuit court entered its May 20, 2021, order, terminating petitioner's parental rights. Petitioner now appeals that order.[3]

The Court has previously held:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been

---

[3]M.B.'s father voluntarily relinquished his parental rights to the child. According to the parties, M.B.'s permanency plan is adoption by a relative. L.W.'s father is currently participating in an improvement period, and the child's permanency plan is reunification with his father.

4

committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying her motion for a post-dispositional improvement period. She argues that the evidence showed she had been drug screening regularly at the local hospital, maintained full time employment, completed parenting classes, and was willing to participate in other services to regain custody of her children. Petitioner asserts that during her post-adjudicatory improvement period, she participated in all the services offered by the DHHR "excluding drug screening at [the] community corrections [location] after September of 2020." We find petitioner is entitled to no relief on appeal.

West Virginia Code § 49-4-610(3)(B) requires that, to be granted a post-dispositional improvement period, a parent must "demonstrate, by clear and convincing evidence, that [she] is likely to fully participate in the improvement period." Further, in circumstances where a parent was previously granted an improvement period, the parent must prove that "since the initial improvement period, the [parent] has experienced a substantial change in circumstances" and that due to the change in circumstances, the parent "is likely to fully participate in the improvement period." W. Va. Code § 49-4-610(3)(D). "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015).

Upon our review, we find that petitioner's argument misstates the record. Petitioner asserted below that she continued to participate in drug screening through the local hospital and that the DHHR had never requested the records from the hospital. However, petitioner's caseworker testified that she requested that petitioner sign a release to obtain those records and petitioner failed to comply with that request. The circuit court deemed petitioner to be not credible in many aspects of her testimony. We have previously held that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). Moreover, the evidence below showed that petitioner tested positive for methamphetamine in October of 2020 and was believed to be under the influence during her interactions with the caseworker and her children. This evidence, as well as petitioner's disregard for the circuit court's order to submit to a random drug screen following the November of 2020 hearing, was sufficient, in our view, for the circuit court to deny petitioner's motion for a post-dispositional improvement period. Furthermore, petitioner fails to assert that she experienced a substantial change in circumstances that rendered her likely to fully participate in an additional improvement period, and it appears that no such change had occurred. In sum, we find no error in the circuit court's denial of petitioner's post-dispositional improvement period upon these circumstances.

Petitioner also argues that the circuit court erred in terminating her parental rights rather than imposing a less-restrictive dispositional alternative. Petitioner briefly challenges the circuit court's finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future. Petitioner also asserts that the children were in familial placements and, therefore, permanency for those children would not be delayed if the circuit court terminated only petitioner's custodial rights. We find petitioner is entitled to no relief.

Pursuant to West Virginia Code § 49-4-604(c)(6), a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the children. West Virginia Code § 49-4-604(d)(3) provides that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child[ren].

Here, the circuit court properly found that there was no reasonable likelihood that petitioner could substantially correct the conditions of neglect or abuse in the near future because she did not respond to a reasonable family case plan as evidenced by the continuation of the conditions of neglect and abuse. As noted above, petitioner tested positive for controlled substances in October of 2020 and was observed to be under the influence. This positive test occurred near the natural termination of petitioner's post-adjudicatory improvement period. Thereafter, petitioner did not consistently participate in random drug screening, which directly resulted in the suspension of her supervised visitations with the children. The circuit court found that petitioner had not visited with the children since October of 2020. We agree with the circuit court that there is clear evidence that petitioner continued to abuse controlled substances and had failed to remedy her addiction.

In support of her argument concerning the termination of her parental rights, petitioner argues that her circumstances were similar to *In re B.S.*, 242 W. Va. 123, 829 S.E.2d 754 (2019), wherein this Court declined to reverse a circuit court's order that terminated a mother's custodial rights, rather than her parental rights. Like petitioner, the mother in *B.S.* also suffered from substance abuse addiction, and that mother attempted to remedy her addiction through a sober living program. *Id*. at 126-27, 829 S.E.2d at 757-58. However, when the mother in *B.S.* moved out of the facility, she relapsed into substance abuse and ceased participating in services. *Id*. The circuit court considered the mother's attempt at obtaining sobriety and ultimately decided to terminate her custodial rights only based on its finding that termination was not in the child's best interests. *Id*. at 128, 829 S.E.2d at 759. In *B.S.*, this Court stressed the "predominately fact bound enterprise" of child abuse and neglect proceedings and emphasized that "absent a mistake of law, an appellate tribunal should disturb a circuit court's determination only if it is clearly erroneous." *Id.* at 130, 829 S.E.2d at 761 (quoting *Tiffany Marie S.*, 196 W.Va. at 237, 470

S.E.2d at 191). Just as in *B.S.*, we decline to disturb the circuit court's decision in this case. The circuit court's finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of neglect or abuse in the near future and that termination was necessary for the children's welfare is not clearly erroneous upon our review of the record.

Finally, this Court has held that

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As the circuit court's finding is supported by the record, it was within its discretion to terminate petitioner's parental rights. We find no error in the circuit court's order on appeal.

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 20, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: January 12, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton