**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* S.C.-1

**No. 21-0647** (Mercer County 21-JA-023)

**MEMORANDUM DECISION**

Petitioner Mother S.C.-2, by counsel Wyclif S. Farquharson, appeals the Circuit Court of Mercer County's July 15, 2021, order terminating her parental rights to S.C.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Andrea P. Powell, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without imposing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2019, the DHHR filed an abuse and neglect petition against petitioner and her husband alleging that S.C.-1 was born drug-exposed.[2] The DHHR alleged that petitioner tested positive for marijuana, tricyclics, and buprenorphine while at the hospital. The DHHR further

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because the child and petitioner share the same initials, we will refer to them as S.C.-1 and S.C.-2, respectively, throughout the memorandum decision.

[2]Petitioner's husband was listed as the father of the child in the petition. However, paternity testing later determined he is not the father.

alleged that petitioner engaged in chronic substance abuse during the pregnancy and ceased participating in a Subutex program. According to the petition, the child suffered from respiratory distress due to his premature birth. The DHHR alleged that petitioner admitted that she used marijuana and prescribed buprenorphine but denied using any other controlled substances.

After the child's birth, a Child Protective Services ("CPS") worker went to petitioner's address, where petitioner's husband explained that he and petitioner had been living together for five years. The husband alleged that they had four children between them, but that the three older children were removed due to "bullsh*t" allegations. The husband alleged that the children's maternal grandmother had accused the petitioner and her husband of not caring for the children and abusing controlled substances. The husband admitted that he had a history of substance abuse over a fifteen-year period and had relapsed into abuse when the older children were removed from the parents' custody. According to the petition, the CPS worker then spoke with petitioner who disclosed that she used marijuana and prescribed Subutex during her pregnancy. Petitioner denied using any other controlled substances during her pregnancy, despite positive test results. However, petitioner admitted that she had struggled with substance abuse for the prior six years. Petitioner further acknowledged that three older children had been removed from her custody, and that she relinquished her parental rights to those children. Petitioner claimed she did so in an attempt to keep custody of S.C.-1. According to the petition, CPS workers later received updated medical records which indicated that the child was experiencing signs of withdrawal and was becoming more irritable, experiencing emesis throughout the night, and developing mild tremors. Thereafter, the circuit court ratified the child's removal, and petitioner waived her preliminary hearing.

The circuit court held an adjudicatory hearing in June of 2019 during which petitioner stipulated to the allegations of abuse and neglect as contained in the petition. The court adjudged S.C.-1 as a neglected child as a result of petitioner's actions and granted petitioner a post-adjudicatory improvement period.

Between October of 2019 and May of 2021, the circuit court held a series of review hearings on petitioner's improvement period. At a hearing in October of 2019, petitioner indicated she wanted to participate in inpatient drug treatment. However, at a review hearing in January of 2020, the DHHR presented evidence that petitioner overdosed on controlled substances and had to be revived with Narcan. Petitioner argued that she was participating in a Suboxone clinic in lieu of attending long-term drug treatment. In May of 2020, the DHHR moved the circuit court to terminate petitioner's parental rights and set the matter for disposition. However, several hearings were postponed to gather petitioner's medical records and because of the COVID-19 pandemic. During these hearings, the DHHR presented evidence that petitioner again overdosed on drugs in May of 2021, resulting in a two-week hospitalization where petitioner was on life support. Petitioner survived the incident and later left the hospital.

In July of 2021, the circuit court held a final dispositional hearing wherein petitioner failed to appear but was represented by counsel. At the hearing, a CPS worker testified that petitioner failed to complete a long-term drug treatment plan, participate in drug screenings, or follow through with the recommendations of her treatment. The worker further explained that petitioner failed to maintain stable housing and employment throughout the proceedings, all in violation of

her family case plan. Finally, the worker stated that petitioner had not maintained contact with the DHHR since February of 2021.

After the presentation of evidence, the circuit court found that petitioner had failed to appear for the dispositional hearing or successfully complete any of her family case plan terms. The court further found that petitioner was still addicted to controlled substances. Petitioner requested that the court terminate her custodial and guardianship rights only, but the court denied the motion. Finally, the circuit court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect, given that she failed to follow through with the family case plan and associated services. Accordingly, the circuit court terminated petitioner's parental rights to the child.[3] It is from the July 15, 2021, dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner alleges that the circuit court erred in terminating her parental rights because S.C.-1 is "currently placed with [petitioner]'s mother and there is a reasonable likelihood that the conditions of neglect can be substantially corrected in the near future." Petitioner argues that under the specific circumstances in this case, the circuit court could have terminated her custodial rights only. According to petitioner, the circuit court was required to give precedence to the dispositions as listed in West Virginia Code § 49-4-604(c) and that it should have granted her disposition pursuant to § 49-4-604(c)(5).[4] We find no error in the circuit court's termination of petitioner's parental rights.

---

[3]S.C.-1's paternity is unknown and proceedings regarding the father remain ongoing. The permanency plan for the child is adoption by the maternal grandmother.

[4]West Virginia Code § 49-4-604(c)(5) provides that a circuit court may

(continued . . . )

Pursuant to West Virginia Code § 49-4-604(c)(6), circuit courts are directed to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(d) defines "[n]o reasonable likelihood that [the] conditions of neglect or abuse can be substantially corrected" as follows: "the abusing [parent] . . . ha[s] demonstrated an inadequate capacity to solve the problems of abuse or neglect on [his] own or with help."

In support of her sole assignment of error, petitioner cites *In re B.S.*, 242 W. Va. 123, 829 S.E.2d 754 (2019), to argue in favor of this less-restrictive disposition. In *In re B.S.*, the mother had her custodial rights terminated, but retained her parental rights based upon eight months of no positive drug screens and the belief that she may "someday . . . do well again." *Id*. at 129, 829 S.E.2d at 760. Here, unlike in the case cited, petitioner failed or otherwise did not participate in several drug screens throughout the proceedings, and the circuit court found that substance abuse remained an unresolved issue at the final dispositional hearing.

The circuit court correctly found that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected because petitioner failed to comply with many services and terms and conditions of her family case plan. Notably, petitioner does not dispute that she missed or failed several drug screens and supervised visits with the child, instead arguing that she would be able to comply with the terms and conditions of her case plan with additional time. However, petitioner does not provide any evidence of compliance with the DHHR and service providers during the entirety of the proceedings. Additionally, while it may be true that petitioner has previously acknowledged struggling with substance abuse, she has at other times flatly denied such abuse while testing positive on some drug screens and failing to appear for other screens altogether. Despite the lengthy nature of the proceedings, petitioner also failed to complete a long-term drug treatment program and, instead overdosed twice while the matter was pending. Petitioner further failed to maintain contact with the DHHR and service providers and struggled to maintain housing and employment throughout the proceedings. Ultimately, petitioner's assertion that she "would follow through with the terms" of her family case plan ignores the fact that she failed to do so over the course of the lengthy proceedings. Petitioner's lack of suitable housing, failure to stay drug free, and lack of candor with the circuit court were not remedied sufficiently to justify the return of the child to her care.

Moreover, the record supports a finding that termination of parental rights was necessary for the welfare of the child. Clearly, petitioner presented a danger to the child if in her custody. We have long noted that, ". . . adoption, with its corresponding rights and duties, is the permanent out-of-home placement option which is most consistent with the child's best interests." *State v. Michael M.*, 202 W. Va. 350, 358, 504 S.E.2d 177, 185 (1998). The circuit court's termination of

[u]pon a finding that the abusing parent or battered parent or parents are presently unwilling or unable to provide adequately for the child's needs, commit the child temporarily to the care, custody, and control of the department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court.

petitioner's parental rights to S.C.-1 was necessary to facilitate adoption for the child. As such, it is clear that termination of petitioner's parental rights was necessary to provide permanency for the child and, therefore, necessary for his welfare. Further, we have long held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error in the circuit court's order terminating petitioner's parental rights without the imposition of a lesser-restrictive alternative.

Lastly, because the proceedings in circuit court regarding the unknown father remain ongoing, this Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(c)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

5

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

   For the foregoing reasons, we find no error in the decision of the circuit court, and its July 15, 2021, order is hereby affirmed.

                                Affirmed.

**ISSUED**: February 1, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton